Thank you. Case number 082073, National Association of Criminal Defense Lawyers v. Chicago Police Department, Utah. Counsel, will all of you come forward and tell us who you are and who you represent, please. Good morning. My name is Locke Bowman, and I am here to present argument on behalf of the National Association. Good morning. Welcome. Good morning. My name is Chris Norborg. I am here on behalf of the City of Chicago and also the City of Julian. And is somebody here from the Attorney General's Office? There is someone in the gallery. Are you going to argue, or are you going to just watch the city do it? No, Your Honor. We did not submit a brief, nor will I argue. We are waiting for this Court's decision. But you are still an affilee. We were designated as an affilee from the State Police. Say again. My name is Gerald Post. I am the Assistant Attorney General for the Illinois State Police. We were designated as an affilee in the matter. But I merely entered my appearance, and we will await this Court's decision. Okay. Very good. Thank you. All right. Counsel, you are both experienced. You know that you each have 15 minutes to speak to your side of the appeal, and you can reserve some time for rebuttal. Would you like to do that? I would. Just a couple minutes. Just a couple minutes. All right. I usually go like this when your time is running short, and you can begin when you are ready. Thank you. May it please the Court. This Illinois FOIA case reflects a circumstance that FOIA was enacted to address, namely the insurance of transparency with respect to the kind of data that the National Association is seeking here. FOIA says government documents should be available to members of the public so that they can fulfill their duty to discuss the issues and make informed political judgments and thereby ensure that the activities of government are truly in the public interest. The issue for public discussion here is the legitimacy of a finding made in a legislatively mandated study conducted by the Chicago police and other police agencies, and finding that the status quo with respect to eyewitness identification procedures is superior to any reform. The political judgment in issue here is whether reform should or shouldn't be enacted, and the data go to addressing that issue and that political judgment. So what has happened here since we started this appeal, of course, is that another division of this Court has decided Day v. City of Chicago. And as a result of Day, the police agencies have made a number of implicit concessions. But that's not in the record, right? Day and all this is not in this record? Day is not in this record. This record was developed before Day was decided. No, I know, but you're saying as a result of Day, a number of police departments have done X. But what the police departments have done after Day is not in our record. That's true. So we don't really need to talk about that. I mean, it's not in the record. I perhaps spoke infelicitously. What I meant to say is this, Judge. As you read the briefs, the City of Chicago, and with it the City of Joliet, acknowledge as a result of Day that the affidavits they submitted to justify the law enforcement and the privacy exemptions were insufficient. They acknowledge that if you get past this question, which they now present as their first argument, regarding the burden of redacting and producing the documents we've asked for, that in fact there has to be a remand for further consideration of the claim they make with different and better support, if they can do it, of the law enforcement and the privacy exemptions. Can we talk about the record for a second? Yes. Help me because I don't know the record as well as you do. Much of what you're requesting, I'm assuming, is outside the scope of what was provided to do the original study. That's true. Yes? Yes, that's fair. Just go with me. I'm not trying to box you in. I just want to get my head clear on a couple things, which means there has to be more people power put in to getting that information, right? Well, that's right. You don't really help me out because I'm trying to conceptualize exactly what it is you're looking for. It looks like what you're looking for in your request are the actions taken around the study, not the study itself, because you've got the study. Well, should I respond at this point? Yes. You're looking for training and what went into putting the study together, right? Now, all of that has been provided to us, so that's not an issue. What the record reflects is that the researchers who did the study and derived the conclusions that they did had some but not all of the information relating to the circumstances of the identifications that they included in the study. So, you know, this is a study that makes very controversial findings. It says that... Yeah, I know. Okay. We know all that. We're really familiar with Lieber. I mean, we live a life of Lieber. Okay. So have you subpoenaed the researchers? You know, I think the... Have you done all that? Well, we don't have any subpoena power. This is a freedom of information. Have you contacted them to get this information? I mean... The data is in possession of the police agencies. But did the researchers have any of this information at one point in time? And if so, wouldn't that be an avenue to go as opposed to... Here's the situation that I think Your Honor's question goes to. There is a small universe of data in the possession of the researchers, some of which the police have agreed to provide to us. Other portions of that data from open cases they object to. There is additional data that the researchers never had, that is in the possession of the police departments. Let me try and... Okay. So we've got a broader... Right. So I guess my question goes to the burdensome issue which they bring up, which is burdensome for us to give this to you. That's why I'm asking of you in the record. Have you gotten this information from the researchers that they also have, which would ease their burden? I can't answer you whether the researchers have the data that they also have. In other words, there's some data that the researchers at some point had, whether they still have it, I don't know, that overlaps the data that the police have. In addition, though, and we also seek this because it's important, there is information that the researchers never have that has remained in the possession of the police throughout. Yeah, that's why I understand that. I guess my issue with FOIA, and help me because we've got to write something, is that is your ability to get some of this information from the researchers part of the analysis when it goes to burdensome against a government agency? And if it is, is there anything reflected in the record that you have tried to get the information from other parties? I don't think that that's part of the analysis. I would suspect that if we went to the researchers, and I'll tell you we didn't, I would suspect if we had that the researchers would have said, our principle with respect to this matter is the police agencies who employed us. You must go to them and ask them for it. In terms of burdensomeness, let me ‑‑ I'm playing the lawyer here, but if you're going to do another study, one would think that one academic would let another academic have their information. That's exactly right. I think, in fact, that's at the heart of this, because the data that the police used has been kept secret, and our researchers can't have an opportunity to examine it and address the validity of the findings that have been so touted as a result of this study. Front page news on the New York Times and so forth. But you are telling us that you have not, and I don't know if it's part of the burdensome analysis, because from the briefs nobody talked about that, and that's why I asked if it's in the record. I'm going to ask all of you, because I don't know the record as well as you. Is there any indication that you made other efforts to get this information from the researchers who did the study that you're all worried about before you went to the agencies to get it? There is no indication in the record that we made that effort, and as I said a moment ago, I think that if we had made such an effort, we obviously would have been rebuffed, because the researchers would have told us it's up to this police department whether you get it or not. These are police documents. They don't belong to the researchers. Is there anything in any cases that say that you have a responsibility before a FOIA request, or in terms of the burdensome situation, you know, somebody's saying it's burdensome, it's burdensome, and then you say, wait a minute, I've done everything I can to help you. I went to all the researchers and got everything I could. So this is the piece I can't get at all, as opposed to you just coming in and not getting the other people in the universe who give you the information to say to the government, I want it all, and then them claiming burdensomeness. Let me say this. We have looked in the federal system and in the state of Illinois cases for anything that we could find on this question of burdensomeness, and the answer is that no suggestion is contained in any of those cases that the requester of public information has an obligation to exhaust other avenues before seeking the information, which is clearly government information, from the relevant government agency. Instead, the analysis is how much effort is going to be imposed on the government in order to comply with the FOIA request, and how much benefit might derive to the requester and to the public from the disclosure of the information, and you wait. I have not seen any cases, though, that have this similar fact pattern where you could already have someone who had the information, at least some of what you wanted. At some time, they had it. And so it's out there, and does that play into this burdensome question? Usually the cases are nobody else has the information. The government is the only person that has it, so give it to us. But in this situation, you do have people who have the information, and it gleaned it more. Justice O'Brien, if we got everything that the researchers once had, we have no reason to believe that they still have it. If we got everything that they once had, we still wouldn't have the information that we need in order to accomplish the important public purpose of analyzing specific aspects of the findings in this study. I'm going to take you in a different direction, okay? My understanding, reading the trial court's order, is that all the closed files, she ruled in your favor that you were intent on to see the redacted closed files. Is that correct? That's correct to a limit, to a certain extent. I think what we're all going to do is understand the universe of what you're looking for and see how reasonable we can all be about it. Okay. Now, here's what we want to see, and it's going to be a long-winded way of getting to the answer to your question, Justice Gellin. What we want to see is the identification histories of the witnesses whose identifications were included in this study. In other words, if witness X identifies someone as the perpetrator, has witness X previously seen a photograph of the person the police deemed to be the perpetrator or suspected of being the perpetrator? Has witness X a previous acquaintanceship with the suspected person? What is the history of this witness's opportunities to observe this person that led up to that identification procedure which is included in the study? Now, to get to your question, with respect to closed cases, what we received was the slice of information that the researchers once had, namely a form filled out by the police that describes the identification procedure included in the study and, according to the police, in some but not all cases, a supplementary report or a lineup report that might or might not contain additional information regarding this identification history problem. Okay. So we received the researchers' information, but we did not receive that body of information which would constitute the full identification history. Why does that matter? It matters because if there's an identification history that suggests some suggestion or it suggests, you know, that this would be an obvious ID because he's my down-the-street neighbor or what have you, then the fact that that particular witness made an identification has less significance for the study could skew the whole thing. Right. That's what we want to look at. To follow up on Justice Gallagher's question, how many closed files are there? That is a moving target, Justice Neville. At a certain point in time, and I don't stand here with the exact number, but it was roughly 50-50, and that was at the point of the trial court's ruling. Well, then how many total files are there? With respect to Chicago, I believe there are 270 files in issue. With respect to Joliet, it's a smaller number, I think around 100, but I don't stand up here with notes as to that precise number. How many identification procedures were there? Something in the range of 600-700 total in the entire database. Now, of course, the universe of closed cases changes over time. Statutes of limitations expire, what have you. Cases that may have been open at the point that the trial court made its ruling are now closed, right, so that to determine exactly how many cases are closed at any given time, you have to go back to the records themselves and make that determination. Let me ask you a question I just asked Justice Gallagher. Wouldn't some of this, and it's going to be burdensome for you, wouldn't some of this be in the trial transcripts, these cases of the trial? It may or may not be, but it would clearly be in the supplementary reports. And we have, you know, this is a very narrow and targeted request. I know, but it is a narrow and targeted request. I mean, if you're saying that, I'm just asking if these cases were tried, the ID witness would say, identify the person under cross, that you'd get a lot of under cross and find out what the history of the ID was, right? If the case was tried, Justice O'Brien, but a lot of cases aren't tried. In some of these situations, there may not, this is, you know, a universe of 700. Maybe at the pinnacle of them, you know, some small percentage is tried. There are many cases that plead short of trial, and there are also cases in this universe that didn't result in criminal charges. So for us to go through these transcripts, yes, we might glean some information with respect to some of the cases in the study, assuming we could connect the trial transcripts to the study data. But we surely wouldn't have the information that we need in order to serve our purpose and to serve the public purpose of evaluating the legitimacy of the findings in this study, which is what this is about. I don't know, I mean, if the trial is really what you're talking about, isn't the legitimacy of this study really about whether or not the person gets convicted because of bad ID, right? We have a unit. And what method is used to ID the person? Ultimately. So ultimately. What is the trial and what happens at that trial? And what the testimony is, and what the person eventually is convicted of, as opposed to what they're charged with, wouldn't that be a goldmine of what the actual results are? I mean, a police report is not going to tell you what happens down the road. You're looking for why and how and why do these people get convicted and if their ID cases was the system that got that ID set up, the direct correlation to a conviction. Well, that is exactly the bottom line here. That is the issue that is at stake, whether we're going to reform the eyewitness identification procedures that are employed as a standard matter in order to confirm and manage eyewitness identifications, which have ‑‑I'm so sorry. So have you gone to the courts and gotten those transcripts? We have not gone and gotten the transcripts because with the transcripts, we would not be in a position to conduct the analysis that we need to conduct. We have a set of data that includes 600 to 700 particular identification instances, and what we need to do is examine the statistical results that the police agencies claim flow from that data set. And the only way we can do that, the only meaningful way this study can be evaluated, is with an examination of each and every one of the instances in the study, not just the court transcripts. So if we went and looked at the court transcripts, we would not be in a position to do what we need to do. Would it be the complete database is what you're saying? What we need is, in addition to what the researchers examined, we need those supplementary and lineup reports that might reflect identification histories. And what I want to emphasize is that there's a suggestion in the city's submissions that that request involves combing through hundreds of pages of irrelevant material, and that's, in fact, not the case. Is it a designated supplementary identification report? I mean, it's one sheet usually, I would imagine. Yeah. Typically in these files, as you know, there's one or two supplementary reports that are going to have the information relating to the background of the witnesses. So it's a matter of going through those, calling out the identifiers, so that we protect law enforcement and protect privacy. And then when that's done, we have a process that may consume, you know, if you take – the city's clearly overestimated this, because they're assuming that they're going to have to go through and redact all kinds of stuff that we don't want in the first place. But it is going to take, you know, some dozens of hours to do this. And so the question for you to decide with respect to this burdensomeness issue is, weighing the importance of this study and the importance of this issue, namely how we address eyewitness identifications in this state, and the need to get behind the findings in the study, weighing that important public purpose against the few dozen hours that would be consumed. That's not our decision at all. We don't make any decisions about whether or not your study is a good thing to do. No. That's not our standard. Our standard is you have a right under FOIA to see things as a public document. But it's not whether or not we think this study is so important. We don't make any judgments on that. That's your business. That's the public's business. Our job is to say this statute is in place, and there are certain rights and responsibilities, and the statute has a statute that we comply with. We're going to decide whether your study is good enough. I mean, that's not my job. My job is to say the law is important. What the statute requires is that there be a weighing of the burdensomeness of production against the benefit to be derived from disclosure. Okay. If you want us to say your study is a great study, that's not our job. The public has a right to know what goes on, period. That's it. That's what the statute says. That's right. Okay. The burdensomeness, but your study is not. That's exactly right. This Court does not need to take any position in terms of aligning itself with the National Association's view on eyewitness identifications in order to decide this case in our favor. No, it shouldn't, because those cases come in front of us, so that's not our job. That's right. Let me again bring it in another direction. We have an order from the Supreme Court saying that this case was transferred, the Joliet part of it was transferred from the 3rd District to our court, and that's all it says. It's transferred from the 3rd District, docketed in the 1st District, and that the court order entered by trial judge in Joliet, Will County, says, as to open files, the plaintiff's motion for summary is denied. As to closed files, it's granted. As to photographs, it's denied. As to remaining information, it's denied. Are those separate, and there was a 304A finding, but are those separate claims, or are they all one claim? If they're not separate claims, 304A doesn't render it appealable. If it's not a final order, giving a 304A appealability finding doesn't mean anything. I think that's what I'm concerned about. If there's even jurisdiction on the Will County part of it, and I think the city is saying absolutely not, and I just want to get your viewpoint. Right. You know, I think that's right. The 304A finding does not literally render something non-final final. It only renders a final order as to fewer than all claims or fewer than all parties appealable. Right. But, you know. Is it a final order, then? Well, clearly, it was everybody's understanding below. I don't care about that. That's not the law. It was. If we did it on that basis, we'd have chaos. We'd get a vote from everybody. That wouldn't work. I think that the voting would have to include the judge as well as all the parties in this particular circumstance. And then they'd pass the ball to us. You know. So you think it's a final order? Yes. I think that this resolves everything, and that nobody below expected that there was going to be any further proceedings in the case. But it's a partial summary judgment. You would agree with that? Justice Gallagher, if I had 20-20 hindsight, I mean if I had anticipated your question in this circumstance back in the Will County Courthouse, I would have asked for the entry of a final judgment in light of the fact that everything had been resolved, and that I should have been dotted and T should have been crossed. There's no question about it. I mean, you know, clearly what you decide with respect to the Chicago case, the issues are the same. There was a motion to dismiss this appeal with, you know, raising the contentions that you've summarized. An order was entered denying that motion. So, you know, I stand here on the assumption that we're addressing both the Joliet and the Chicago cases as fully wrapped up. I appreciate your candor. Thank you. Yeah. Thank you. Yeah. Anything else? Well, I just want to briefly touch on a couple of points. When we get past the burdensomeness question, as we must in our view, the issue, the next issue becomes the question of how the remand will be handled. And clearly, you know, there have been three years of litigation in this case. The city's police departments have never articulated a document-specific reason as to why, after all these redactions that we agree to have taken place, there should not be disclosure of the documents. So I submit that this case should go back to the trial court with an articulated presumption that the police records that we are looking for should be disclosed. Now, there may be a circumstance in which one of the police departments can articulate a specific reason as to a specific case or a specific document that after you've made all the redactions, if you look at the police report, that there should be, that there's some legitimate concern about privacy or law enforcement. Such a circumstance would warrant an in-camera review. Either privacy, which is very important, or it might compromise an ongoing investigation, which is another concern. Correct. And that's a valid concern, too. But what Day makes very clear is the kind of blanket invocations of the privilege that took place below in this record are insufficient. And they're Lieutenant Gibson's affidavits, which are the same affidavits. Yes, the same affidavit. Right. And what I would urge this Court is that if you remand it, that when you remand it, you make clear that for there to be an in-camera review, there needs to be a specific articulation on the part of the government with respect to particularized documents. This is exactly what Day requires, that one of those exemptions is potentially in play, not the kind of, you know, let's just remand this case and dump all these records into the lap of the circuit court and give the circuit court the responsibility to articulate what the government's position might be. This case should go back to the trial court with the presumption of disclosure. And I think I've probably overstayed my time, if not my welcome, and I thank you. Thank you. Okay. One second. May it please the Court. As this Court has recognized, the principal issue here today is measuring the burden on the city to turn over the requested records against the public interest in receiving those records and having access to those records. And as Justice Gallagher noted, the first step in that is understanding the universe of documents that we're talking about. Now, with regard to documents under CPD control, CPD documents here, I can give you relatively specific numbers. There are 171 case files involved. And in those, and this is all in the record, and in those 171 case files, there are about 323 identification procedures. Now, in the study, the material actually considered by the PhDs who put together the study that is at the center of this case is comprised of three general types of documents. First of all, as Mr. Bowman alluded to, there are forms. There are actually two types of forms, not just one kind of form. But those are two one-page forms that were filled out by the people who, by the officers who were involved in putting together the lineups or the photo arrays in this case. And then in most of these 323 instances of an identification procedure, there is an associated portion of the police's investigatory file, which has been referred to in this case as a supplementary report. Now, what has been turned over so far are the closed case report data files. So the 323 are open? No, I'm sorry. It is confusing, and I'll try to make it as clear as I can. Of the 323, how many are closed and turned over already? About half. So we're down to 161 now? We're down to about 161 identification procedures, each of which would have the associated documents that I was beginning to describe, the two forms and, in most cases, another stack of information. Just so we're clear, because we know things have happened while this has been pending. They have that material for the 161 or two cases that are closed? They have been given that material, or you just don't object to giving it to them? Once again, just to clarify, the 161 or so are actually identification procedures that are spread out over a number of cases, about half the 171 cases I mentioned earlier. So taking about 85 is half. Earlier, excuse me, late last year. Wait, wait, wait. Help me. 323 identification procedures, right? Exactly. They've got about half. Is that right? Okay. Let me take a step back. 171 cases involved in the study spread evenly over those 171 cases, essentially evenly over those 323 identification procedures. You're talking cases, not procedures when you're talking about numbers. Yes. The numbers that have been turned over. Approximately half of the 171 have been turned over. They either have been turned over or, in the interest of full disclosure, may have gone closed since they were turned over and are eligible to be turned over. Okay. We can discuss that. This goes to the continuing possibility of cooperation between the parties. And then is there anything in the record that would tell us the people time, formerly known as man hours, staffing hours it would take to redact the information in the remaining ones that they want? Yes. The record makes assumptions and estimates because, as I will get into more detail, these files are very complicated and unique. Each file has its own characteristics, its own type of information involved. But the estimates based on about half of the cases being still open. So you have the open report data file. Half of the 171 cases, the open report data file has not been turned over. And then for all the 171 cases, the bulk of plaintiff's request is for the investigatory file for each of those cases. So essentially you have, I'll call them four categories of information. You have the investigatory files in the closed cases, which have not been turned over. The investigatory files in the open cases, which have not been turned over. The report data, once again, this is the information that actually was used to put together the study that is at the center of the case. In the open cases, which has been or is eligible to be turned over. And the report data in the open cases. Oh, yours isn't open. Oh, I'm sorry. Mine was. See, I get confused myself. It's okay. Invert that. In the closed cases, it has been turned over. In the open cases, it has not been turned over because of the asserted exemptions. So to understand, to come full circle to my first remark when I stood up, to understand the burden here, you need to understand you're talking about 171 investigatory files, which, depending on the nature of the underlying offense, can be quite considerably huge. And you're talking about 85 cases worth of report data, which is smaller than the investigatory files, but is still in many cases going to involve quite a number of pages of information with a considerable amount of very sensitive material. I'm sorry. If you're doing the investigative file in the open, the report data in the open cases will be there, too, correct? I mean, they'll all be together in one place, wouldn't it? The record is not exactly clear, but I think I can say that the two forms that were sent back to the PhDs who did the study are not part of CPD's files. The additional material that was sent over to the PhDs in the study in the majority of those cases would also probably be, I mean, would be in the files. It may be duplicative, because what happens is in most of the cases, in most of the identification procedures, there is part of the investigatory file that went over to the PhDs to look at in order to analyze. They didn't just look at these two forms is what I'm saying. In the vast majority of cases, they also looked at a fair amount of background investigatory information. Did they get a copy of that, or did they send all that, the first study people? The first study? In other words, is it still there? Does someone still have it in his file and say, here, take it? Here, Mr. Bowman, take it all. We're fine with that. Oh, do the PhDs still have it? I'm not certain exactly what the status of that is, but to be honest with you, Justice O'Brien, this has been going on for three years, and no one's ever picked up the phone and called the PhDs. Mr. Gallagher said, you have this stuff? Well, to be fair, the city is not interested in getting this shit over. We're not throwing it at you, but somebody should pick up the phone and say, is this stuff available that we could go over and look at and see what you think? Well, perhaps the plaintiffs, Justice Gallagher, could have contacted these academics, and perhaps they would say, yes, we have maintained a file. But I must say that the city's position, and I think that Mr. Bowman fairly pointed this out, would be that it is not their right to turn over this material in this context. Obviously, the PhDs are not subject to FOIA. They couldn't be FOIA'd. Well, they're people, and they say, hey, you got this stuff? I'm going to put one page to you and another. Hi, I'm writing this study, too. Can I look at your information? Have both of you ever sat down with a mediator in the middle of the room and said, okay, let's go, and figured this out? I mean, isn't that – have you done that at all? There hasn't been an official mediation done. There has been, obviously, ongoing discussion about the contours of what type of information there is and ongoing disagreement about what sort of burden would be involved in processing the information for disclosure. And that's where the rubber hits the road in this case. So what kind of people hours would it take to give them everything they want? It would take – How much people hours and how much money? Our best estimate that is in the record, and frankly, it is also in the record that this is a conservative estimate, is 150 people hours to process the closed – excuse me – the open report data material and the remainder of the investigatory files. And how much money does that translate into? How much money does that translate into? Because people have to get paid. Twenty personnel days, and the complexity here arrives at this point, and that is you have 20 personnel days, but we're not talking about the type of job that can be done by a temp or a – By a lawyer or someone – Somebody who's – A graduate student in criminal justice who could earn credit hours for doing it and be supervised by an attorney? That's – at step one, it's going to be – So this is the kind of thing a mediator would suggest to you. Of course. At step one – We have mediation in the appellate court. I'm on the committee, and there is such a thing. I'm throwing that out there. Understood. And I am – and the city is perfectly open to mediation in certain cases. How much money is it going to cost? Twenty personnel hours, but these type of personnel hours would be – I love you. Twenty personnel hours at four times. How much money is it going to cost? I'm afraid – It's in the ballpark. It's in the record. I must say it's not in the record. The monetization of it is not in the record. All right. So you – I can't speak to that today. Sorry, I shouldn't have said that. But, you know, the rubber meets the road is how much money is it going to cost the city of Chicago? Because that's really what we're talking about. The burdensome is going to be people hours and who are we going to hire and all that. So how much money is it going to cost? Respectfully, Justice O'Brien, it certainly can be monetized, and that's one way to look at it. Another crucial way to look at it – and this is why FOIA explicitly recognizes that public bodies have duly undertaken work and that they are not to be compelled to respond to requests when that is going to make it virtually impossible or severely hamper their ability to complete their duly undertaken work. And the problem – Your job is to protect the people of the city of Chicago. And in this case – Your budget has to be done for that. And the question becomes how much money is this vis-à-vis who you're going to take off the streets to do it. Absolutely. So that's why I'm asking you, how much money is this going to cost? Where are you going to put your budget? Do you have a budget line item in your budget for it? Do you have a line item anywhere where you can get the money to do it, to hire people? Not just in amorphous terms, but let's get to where it meets the road. Burdensome talks about how much is it going to cost us. Cost is a quantitative thing. Is there something in the record that says, we don't have the money, we don't have a line item for this, we don't have anything for this? I mean, is your budget – do you have a budget for this, or what? Do you have a miscellaneous budget at the police department for this kind of stuff, or what? No, this is not exhaustively treated in the record to the extent that Your Honor seems to believe would be helpful. Well, I guess, should it be? You know, should this have been done in the trial courts, that we had something to rest our head on? Because the reality is, these are public documents, and they've made a request, and the issue for us is burdensomeness. Now, burdensomeness means where the rubber meets the road. What information do we need to determine whether or not this is burdensome? If you're a small police department in, you know, Stickney Township somewhere, and somebody wants 150 person hours, it could be incredibly burdensome. You've got three police officers. But is that the situation here? We don't know. And is there anything in the record that can tell us that? And if it's just amorphous, it's burdensome, what are we going to say? I mean, how do we know it's burdensome? We don't know. Dave seems to answer that question. What we do know, and I'll gladly address Dave in a moment and tell you how we believe this applies. But what we do know from the record, and what is established in the record by the affidavit testimony I used at the summary judgment stage, is that this is 150 personnel hours, but only that severely underestimates or misrepresents what it would really involve. What this would involve, and Justice Gallagher pointed out, you would need an attorney to look at the material. Absolutely, someone who is versed in FOIA and can determine whether or not certain things are exempt. But the attorney in an individual case would not be capable of determining whether that was the entire story. The attorney would need to talk to the investigating officer in that case to make a determination whether there is material in these files or in these records or on these forms that although it may not to the attorney who knows nothing about the case, the case's eyes appear exempt because it runs the risk of putting at risk the interests that are protected by the Section 7 exemptions, specifically the Section 7C exemptions dealing with law enforcement. In order to really fully redact and preserve those interests, redact the materials and preserve those interests, the attorney would need to consult with the officers who had worked on the case in order to make sure that just by redacting what Plaintiff has classified and oversimplified as identifying information, that that would be sufficient in any particular case. Aren't most of these files, some of these files checkbox, right? Some of... Some of the reports checkbox. I'm not certain to be honest with you what exactly, if there are those. I know what a lot of them look like and those are like prose reports. My question is, are the supplemental reports basically the written ones? Supplemental report... It's not a checkbox thing. They are not. The original report would be a checkbox, correct? The original ID history would be a checkbox. Well, there are forms that were prepared for the purpose of the study and then there are also forms used by CPD in a general sense, which... There's a form in which there's at least something that would be uniform that can be quantified. Well, not... I don't mean to be glib or seem evasive, but each case is different. The way that an identification procedure may have been setting aside the standardized report data forms that were developed by the academics, the material that is in the investigatory files and the way that CPD approaches and, over the course of this one-year study, approached individual identification procedures is different. It's often in the middle of what has been referred to as supplementary reports over and over in this discussion. And I think that confuses matters because that describes a great number of forms and files that are used by the CPD. Different kinds. I'm sorry. The forms are qualitatively different, not quantitatively. There's at least one report that's more uniform in its nature and then there's a supplemental report that is the written report of the officer. Is that kind of a fair assessment of what we think these things look like? Not exactly. Okay. I mean, and the record has not exactly been developed with excruciating detail on this front, but generally speaking, there is an initial report opening a case and then everything that comes after that is denoted a supplementary report. There will be different kinds of supplementary reports. You have to sift through and make sure you get the right one. Exactly. Because several of them might be supplementary and they have nothing to do with the ID. Some might be a narrative and some might be a checkmark. Some might be something other than the ID, too. Exactly. And in some cases where there are identifications, the record shows that, for example, there would be a photo array that the witness checked next to the person who they believe was the culprit, et cetera, et cetera. But, I mean, the larger point here is that in every single one of these 171 cases, there are going to be a lot of pieces of paper with a lot of information, much of which would not be at all relevant for points of purposes. But, of course, it would not be known whether it was until it had been reviewed and some determination made whether or not it was responsive to the FOIA request. Secondary determination whether or not there were exemptions. And then what we would argue is a third determination that isn't always the case in a FOIA case, but is certainly the case here, and that is in case-specific instances where there is information in these files that ultimately could compromise the interests protected under Section 7, we would need to further redact. So the point is developing a redaction protocol, some sort of straightforward way to ensure that exempt material is not disclosed, is simply implausible in this case. And that is where the burden comes in. The redaction process here would involve exhaustive, multi-party analysis of the material. So, once again, this comes down to a disagreement between Plaintiff and the City as to what the burden might be. We submit that the City is in a much better position to understand what the burden would be on itself because it has a better understanding of exactly what type of materials are involved here. So our submission with regard to the burden is approximately 20 personnel days, but those personnel days would involve a number of different people, people per file, and the logistical time involved would extend it beyond this 20-day period. And as a matter of law, we would submit under FOIA, it is plain that a request that would take this amount of time and could not be completed within the maximum of 14 days allowed under FOIA should be deemed by this Court to be unduly burdensome and therefore exempt. That is the position that we take with regard to burden. Now, of course, the second step, as Mr. Bowman recognized, is to compare that burden, the quantitative amount of that burden, and compare it to the public interest in the material. We accept absolutely the representation of what the public interest in the release of all this material is. We agree that as a political matter, that in the marketplace of ideas, it would be helpful to NACDL to be able to say, not only is this study flawed in design, which they've already established for their purposes with a number of academics chiming in on their side saying this is fundamentally flawed by design, it is fundamentally flawed because it did not take into account all the relevant data, but it would help them, we agree, to get all of this non-report data, all this data that was never considered by the PhDs who put together the study, and basically run their own study and say, look, if you had run a study the way we say it should have been run, then you would get a different outcome. Certainly that would be helpful for them. And certainly that would help them achieve what they've identified as a laudable public interest in reforming and getting the absolute best eyewitness regime possible, eyewitness identification regime. Are you essentially arguing that the public purpose doesn't justify the city spending time? Is that essentially what you're arguing? Well, yes. And ultimately that's the test. The test is whether or not the public purpose outweighs the burden. And this brings me to the complexity of the public interest side of things that is not recognized or acknowledged by plaintiffs. And that is you need to look at the net public interest. May I ask you a question? Sure. Go ahead. These are summary judgments and all we're talking about is facts, right? Or cross motions for summary. Yes. Is not summary judgment not appropriate here considering all we're talking about here is facts? Aren't there questions of fact that remain important? Well, you're claiming as a matter of law it's unduly burdensome. And they're claiming as a matter of law that we are entitled to this material. And then all you've done, both of you, is argue about the facts. So these really aren't right. And say we don't agree with the facts. We don't agree with what's necessary to be turned over. We don't agree with what we should be producing. I mean, that's a factual dispute to me. This is a legitimate question. I am unfamiliar with a case where a FOIA case has been tried. Generally these type of decisions are made by the public body in the first instance and then upon review in the circuit court and upon review in this court and then in the Supreme Court on the basis of whether or not exemptions were properly. But we're not talking just about FOIA. We're talking about basic boilerplate law, summary judgment in which there are no facts, material facts in dispute, and the person is entitled to judgment as a matter of law. The material facts dispute. So many facts in dispute here. All we've done is talk about should not all of this go back to the trial court to get this out so that we know what the facts are and the court can either do it in camera or figure this out so that how can we decide as a matter of law on these facts? I may have misspoke when I said that there's a disagreement about whether or not. Take a step back. There are no facts in dispute, and here's why. Plaintiffs have not disputed that this 150 personnel hour estimate that the city has presented, nor have they disputed, directly disputed, or indirectly to my mind, the record doesn't reflect, the concept that this 150 man hour, personnel hour approach would involve, would be a complex endeavor, which might involve more than one person per piece of paper, more than one set of eyes, making sure that the exemptions are all covered. So I don't think the facts are really, I don't think the facts are really in dispute. And I think what it comes down to is the legal question of whether or not this record. The 20 days is burdensome. Exactly. That's the bottom line. 20 days, asterisk, in the sense that the record shows the 20 days would be played out, and that is with a lot of different people involved. The bottom line is you're saying all these things are agreed to, and your estimate is 20 days, and you want us to decide 20 days is burdensome. Period. I think at the end of the day that is, those are the facts, and it is a legal question, yes. And we would submit that there is not a factual issue that needs to be permitted. No, go ahead. Justice Neville, I would like to get to the question that I brought up about the net public interest, because I think that that's very important, because that is the key issue here. We say that there is an undue burden. They disagree, but assuming that you agree with us that as a matter of law there is an undue burden, the next question is comparing it to the public interest. Plaintiffs identify a public interest that we do not claim is irrelevant or illegitimate, but they neglect to look at the two public interests that are promoted by not disclosing this information. The first one is that by disclosing the information you run the risk, regardless of how much burden you take on to make sure that you're redacting information, of disclosing information that causes harm either to an ongoing investigation, the public obviously has an interest in the success and the legitimacy and the integrity of investigations, or, God forbid, to individuals involved in the underlying cases, investigations, witnesses, people who gave information. Obviously redaction in an ideal world, a perfectly done redaction, a perfectly done production is going to protect those interests. But the fact is that this is not a perfect world, and forcing that sort of disclosure runs that risk. Whether or not you're getting into facts again, because you're getting into whether you can do a redaction. That's the question of fact, is whether a proper redaction that protects all the very valid interests can be done. That's a factual question. That is true. But even the second one. You're speculating on the fact that the information might be disclosed and might cause someone harm. Sure. Okay. So setting aside, if the court were to deem that a factual question that would not be proper in summary judgment, the second public interest that is not discussed is a more general concept, but a very important concept. And that is the disincentive to public bodies that would be created if this case were to be decided as the plaintiffs ask. And what I mean by that is this. The plaintiffs are looking at a study that the city of Chicago, excuse me, the police department participated in under order of, you know, by state statute was compelled to participate in it. However, in most instances, when a public body agrees to participate in an academic study like this, it's going to be voluntarily. No, this wasn't. And this wasn't. But in many cases, an academic will say, will go to a public body of some sort and say, we would like to study this. Can we work with you to develop this, so on and so on. In the event that this court were to decide that disclosure in the sense that the plaintiff asks for is appropriate in this case, it would create an incredible disincentive for public bodies going forward to participate voluntarily in studies. And that is because the city would be forced, the public body would be forced under this precedent, not only to, pursuant to FOIA, disclose information that was actually directly relevant to study, but essentially to throw open its files to a FOIA request for any information that is arguably germane to the underlying subject matter of the study. And if this court were to determine that a public body is under FOIA going to be held to that responsibility, then it would just become, A, simply too much trouble for a public entity to run the risk that that was going to happen in terms of logistics and burden, and B, substantively, public bodies are going to be hesitant about getting involved in studies where they might have to give up information that they think is, as the city takes a position here, is exempt and the risk of giving up exempt material is large enough to create a concern. So this is the public case. When public funds are used, the public doesn't have a right to know? I'm sorry? When public funds are going to be used to do the study, then the public doesn't have a right to know? That's what you're telling me? No, no. I'm certainly not saying that. I'm just saying that under FOIA, there are the consideration under Section 3, subsection 3, involves balancing the public interest in knowing. The public does have an interest, and we are not denying that there is a public interest that derives from disclosure. But aren't we supposed to narrowly construe the exemption? Yes, you are. Absolutely. You're supposed to narrowly construe the exemptions. But to be frank, or to be clear, this point that I'm making does not go directly to the issue of whether exemptions apply. You're saying it will be a chilling effect upon people wanting to participate in studies if they have to turn over all their investigative materials? Yes. That's what you're saying? There's a deterrent. But this was mandated because we want to make sure that if police departments are doing lineups, that they're doing it the proper way, and you're getting the right person, and you're not letting a criminal walk down the street to commit another crime, and you're not putting a wrong person in prison. That's kind of an important societal interest. It is certainly an important one. It's probably one of the most important ones we could ever think about. I have one last question for you. Sure. You seem, and I'm not putting, believe me, I'm not trying to put words in your mouth, but you said that, you know, there's an argument that they've made that the study was flawed. Has there been any thought of just withdrawing the study if it's so flawed that academics are attacking it left and right? Because that's what they're seeking to say, it was so flawed that nobody should rely upon it. If it was withdrawn, either redone or not redone, and we said, well, we tried it, it didn't work, but we're withdrawing the study because the Mecklenburg study was so flawed, that would end the whole thing. Two points. Okay. First of all, it is not our study. I don't know if it would be withdrawn by those who did it. The CPD, this was not done under the auspices of the CPD. It was done using information that the CPD provided in part as well as Joliet and Emerson. Only if you could influence them to do it. I don't know all the details about who owns the study and who, you know. You're saying that you own the material that supported the study, but they own the study once they did it. That's what you're saying. Exactly. And the second point I would make, and I think this is important just because conceptually and as a matter of principle in this case, the city takes no position with regard to the validity of this study. Okay. The validity of this study, much in the same way that Justice O'Brien recognized that that is not essentially relevant. We take no position. We do not support it. We do not detract it. The point we make is that plaintiffs, and the record shows this, have amassed a very considerable amount of force against the study. They have established, or at least arguably established, that the study was fundamentally flawed by design and that it was fundamentally flawed in that it failed to take into account this information. So in the marketplace of ideas, in the political world, in the political reality, they have a lot of ammunition to take on the result of this study. What they want now, and earlier in the earlier case there was a lot of football analogy being thrown around, they want to pile on the study. They want to completely discredit the study. And I agree that that would be the ultimate best political outcome for them, for their purpose. But you're the person who has to bear the time to do that for them. Exactly. And that's where the balance lies. Is it worth? They don't want to do it, but then you're the person who has to do the work. Absolutely. So, you know, it's kind of a, sounds like home. That's exactly right, Justice O'Brien. And I'd like to make one last point. I know I've been up here for a long time. I just would like to touch, in the event that there is a remand, and in the event that day comes into play in this case, and that there is an in-camera procedure of some sort, under the act it is very clear that what would need to happen in that remand would be an incredibly burdensome process, and there's no getting around that. Plaintiffs would like to present it as though the city would have to essentially take on this burden and then give the court a chance to pass on certain select documents. That's not what the act contemplates. Under Section 11 is the city asserting exemptions on certain documents, giving them to the court, having the court make the determination whether there are exemptions, and if there are exemptions, whether or not there is a redaction protocol that could take care of those exemptions. And if that is, once again, at that point you'd have to get into undue burden again, because the court would have to say, yes, you know, I see there is material. The city should be able to redact this, but it will take X amount of time for the city to do that. So we're back around full circle to the burden. So if it does go on camera per day, bear in mind they involve one investigation, one case. This involves 171 cases. And if you have no further questions, we'd ask you to affirm the judgment of the circuit court. Thank you. Thank you. Any brief rebuttals? With respect to this burden versus benefit analysis, a couple of very quick points in rebuttal. Twenty personnel days on the one hand versus an important public debate on the other hand. To be very clear, the study has not been withdrawn. The authors of the study reject the criticisms that have been made of it. If you look on the Chicago Police website where the study is published, there is an addendum to the study that says speculative hypotheses are all we've heard in opposition to this study. Don't reject this on the basis of speculative hypotheses. So we have a standoff in the public policy debate. As a result, a standoff with respect to this question of legislative reform. There is a body of law to which the court can have reference in deciding this question about benefit versus burden. There are indeed cases cited in the briefs in which a trivial or nonexistent benefit does not outweigh a burden of the order of magnitude that's been talked about here. On the other hand, there are cases, and they're cited in the briefs, in which there may be a public benefit of some nature, but the burden is gargantuan, right? Not 20 personnel days, but eight years of work to go through a warehouse. I submit that there is no case of which we are aware or that has been cited in the briefs in which so small an acknowledged burden has been held to outweigh so large a potential benefit in disclosure. So if you were to decide in favor of the city, you would be erecting an enormous barrier to the principle of open debate and disclosure that animates our FOIA. It's in the record, of course, that the city of Evanston disclosed all this information. There were no untoward effects. This is a narrow targeted request. NACDL should have the opportunity to examine this data and further this important public debate. Is this a summary judgment case? It is a summary judgment case, Justice Gallagher. It's clear in the record that, you know, they've made their case as to what the burden is, 20 personnel hours. We have extensive affidavits in the record about the benefit. It's there. You can decide. Okay. Thank you. Thanks very much. Interesting case. Good lawyer.